UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

WILLIAM DESMOND CONRAD,       )
                              )
            Petitioner,       )
                              )
      vs.                     )       Case No. 1:15CV00107 SNLJ
                              )
UNITED STATES OF AMERICA,     )
                              )
            Respondent.       )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set

aside or correct sentence by William Desmond Conrad, a person in federal custody. On

March 20, 2013, Conrad pled guilty before this Court to the offense of possession of

child pornography and, on August 26, 2013, this Court sentenced Conrad to the Bureau

of Prisons for a term of 151 months. Conrad's § 2255 motion, which is based on several

allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## FACTS

**A. The Indictment.**

On August 16, 2012, a Grand Jury in the Eastern District of Missouri,

Southeastern Division, returned an Indictment against William Desmond Conrad,

charging him with one count of Possession of Child Pornography in violation of Title 18,

United States Code, §2252A(a)(5)(B). (Case No. 1:12CR00085 SNLJ; Doc. # 1). Conrad

was arrested and made his Initial Appearance before United States Magistrate Judge

Lewis M. Blanton on November 19, 2012. The Federal Public Defender's office was

appointed to represent Conrad, and Assistant Federal Defender Scott F. Tilsen (AFPD Tilsen) filed an Entry of Appearance. AFPD Tilsen appeared on behalf of Conrad at an arraignment on November 21, 2012, at which time Conrad entered a plea of not guilty to the charge. An evidentiary hearing on any pretrial motions was scheduled for December 12, 2012. AFPD Tilsen subsequently made several requests for additional time to consider whether to file pretrial motions. These requests were granted by Judge Blanton and the date for an evidentiary hearing was ultimately rescheduled for February 4, 2013.

**B. PretrialMotions.**

On January 17, 2013, AFPD Tilsen filed a waiver of Conrad's right to file pretrial motions. On February 4, 2013, Conrad appeared before Judge Blanton with AFPD Tilsen and waived his right to file pretrial motions in open court. At the hearing, a record was made that Conrad knowingly and voluntarily waived his rights to file or proceed on any pretrial motions. Conrad's case was later scheduled for a plea hearing on March 20, 2013, before this Court.

**C. The Plea Agreement.**

Conrad and the Government reached a plea agreement that was reduced to writing, which set out the parties' bargain and understandings as to the disposition of Conrad's case. (Doc. #35).

Conrad agreed to plead guilty to the charge in the Indictment. As part of that agreement, the Government agreed that no further federal prosecution would be brought relative to Conrad's possession, receipt, or transportation of child pornography prior to November 8, 2011. A factual basis for the charge was included in the plea agreement.

(Plea Stip., at 3-4). The stipulated facts provided that a federal search warrant was executed at Conrad's residence to search for evidence of child pornography. A hard drive was seized pursuant to the search warrant. Forensic analysis confirmed there were numerous images of child pornography found on the hard drive, that is, children engaged in sexually explicit conduct. During an interview with law enforcement officials, Conrad admitted that he used file sharing programs on his computer to search for images of child pornography. The agreement further set forth that Conrad "knew that by using the file-sharing program he could download files from others who could also access his files." (Plea Stip., at 4).

Pursuant to the agreement, the parties agreed that Conrad could request a sentence below the applicable advisory guideline range ultimately determined by this Court, while the government agreed to request a sentence no greater than the low end of this range. (Plea Stip., at 2). The parties expressly acknowledged that this Court was not bound by the parties' Guidelines recommendations. *Id.* With regard to the statutory penalties, the agreement set forth that Conrad "fully understands that because he has a prior conviction for Criminal Sexual Conduct involving a minor who was less than thirteen years old (State of Michigan, 7th Judicial Circuit, Genessee County Circuit Court, Case No. 03-012932-FC-R), the maximum possible penalty … is imprisonment of **not less than ten years** nor more than twenty years." (Plea Stip., at 4) (emphasis in the original). The parties further agreed that a number of Specific Offense Characteristics applied to Conrad's sentence, which, after a three level reduction for acceptance of responsibility, ultimately resulted in an estimated Total Offense Level of 32. (Plea Stip., at 5-7).

In the plea agreement, Conrad agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea." (Plea Stip., at 7). Conrad further waived his right to appeal any sentencing issues, other than Criminal History, if sentenced within or below the applicable Sentencing Guidelines range ultimately determined by the Court. (Plea Stip., at 7-8). Additionally, Conrad agreed to waive his right to file any post-conviction pleading, including a petition under 28 U.S.C. § 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel. That waiver was set out as follows:

> The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

(Plea Stip., at 8.)

The plea agreement also provided that this Court would impose both standard and special conditions of Supervised Release. The agreement expressly stated that some of these special conditions may include that Conrad not possess a computer or have access to the internet, that he have no contact with minors without the authorization of the Probation Office, that he participate in sexual offender counseling, and that he not maintain a post office box. (Plea Stip., at 8-9). The agreement made it clear that this was not an exhaustive list of special conditions, stating that "[t]hese *and any other special conditions* imposed by the Court will be restrictions with which [Conrad] will be required

to adhere." (Emphasis added). The agreement further set forth that Conrad would be subject to standard sexual offender registration requirements. *Id*.

Additionally, the agreement provided that Conrad had no right to withdraw the guilty plea, provided the District Court followed the terms set forth therein. (Plea Stip., at 13).

### D. Guilty Plea Hearing.

Conrad and his attorney, AFPD Tilsen, appeared before Judge Limbaugh on March 20, 2013, and signed the Plea Agreement in court. During the hearing, Conrad assured this Court that he was satisfied with the performance of AFPD Tilsen:

> The Court: I'll ask you are you satisfied with the way your lawyer has handled your case?
>
> Mr. Conrad: Yes, I am.
>
> The Court: Has he investigated the case to your satisfaction?
>
> Mr. Conrad: Yes, he has.
>
> The Court: Has he done everything you've asked him to do then?
>
> Mr. Conrad: Yes, he has.
>
> The Court: No gripes or complaints whatsoever?
>
> Mr. Conrad: None, Your Honor.
>
> The Court: Has anyone forced you, coerced you or threatened you in any manner to get you to plead guilty?
>
> Mr. Conrad: No, Your Honor.
>
> The Court: The lawyers have given me a written guilty plea agreement consisting of 14 pages, and I see that you and your lawyer signed it on page 14; is that right?

Mr. Conrad: That's correct.

The Court: Have you read the agreement?

Mr. Conrad: Yes, I have.

The Court: Have you gone over it in detail with your lawyer?

Mr. Conrad: Yes, we have.

The Court: Has he explained the contents of the agreement in detail to you?

Mr. Conrad: He has.

The Court: And do you understand the contents of the agreement?

Mr. Conrad: I do.

The Court: Is there anything here that you do not understand?

Mr. Conrad: No, Your Honor.

The Court: Now, have any promises been made by anyone to get you to plead guilty other than the promises that are set out in this agreement?

Mr. Conrad: No.

The Court: This is the complete, full, and total agreement then; right.

Mr. Conrad: Yes.

The Court: You understand, too, that if I accept this agreement, you will not be allowed to withdraw your plea of guilty: Do you understand that too?

Mr. Conrad: I understand.

(Plea Hrg. Tr., at 5-8).

This Court proceeded to explain that, pursuant to the agreement, Conrad was

waiving most of his appellate rights:

The Court: I see on page 7 then one of the provisions that you're giving up is your right to bring an appeal in this case as to the non-sentencing issues: That is, to everything that's transpired in the case up to and through this guilty plea hearing today: Is that your agreement?

Mr. Conrad: Yes, Your Honor.

The Court: Then the next provision – sentencing issues – states if I agree to the sentencing guidelines levels agreed to in this document and then if I impose a sentence against you that's within or below the sentencing guidelines range, if all that happens, then you'll be giving up your right to appeal even the sentence itself: Do you agree with that, too?

Mr. Conrad: Yes, I do, Your Honor.

(Plea Hrg. Tr., at 8-9).

Reviewing the statutory penalties, this Court advised Conrad that the range of punishment for the offense was a minimum sentence of 10 years imprisonment and a maximum sentence of twenty years. This Court proceeded to explain that this "range of punishment is in place because you have a prior conviction [for] criminal sexual conduct involving a minor who was less than 13 years old from the State of Michigan." (Plea Hrg. Tr., at 11). Conrad acknowledged that this was true. *Id.*

This Court reviewed additional details contained in the written plea agreement, including the estimated total offense level agreed to by the parties. The prosecutor then provided a summary of the evidence the government would prove if the case were to go to trial. (Plea Hrg. Tr., at 11-14). This account was consistent with the facts outlined in the written plea agreement. Conrad acknowledged that all of these facts were true and correct. (Plea Hrg. Tr., at 14). After reviewing the specific elements of the offense, this Court accepted the plea, finding that Conrad entered the guilty plea freely, knowingly,

and voluntarily. A Presentence Investigation Report (PSR) was ordered and a sentencing hearing was scheduled for June 24, 2013.

### E. The Presentence Investigation Report.

United States Probation Officer Kenneth W. Lawrence prepared the PSR for this Court. (Doc. # 44). The Offense Conduct portion of the PSR included detailed information about the case, including how the investigation into Conrad's illegal activities began. (PSR, ¶ 11). The PSR stated that during an undercover operation utilizing peer-to-peer file sharing networks, law enforcement officials identified a specific computer that was offering images of child pornography to other users. Further investigation revealed this computer had an IP Address which authorities later connected with Conrad's residence. The evidence obtained from the peer-to-peer file sharing network ultimately led to a search warrant for Conrad's residence and the recovery of a hard drive containing over three hundred files consisting of child pornography. (PSR, ¶¶ 11-13). The PSR further stated that Conrad "knew that by using the file sharing program, he could download files from others who could also access his files." (PSR, ¶ 14).

As anticipated by the parties in the written plea agreement, the PSR calculated the Total Offense Level to be 32. (PSR, ¶ 34). The PSR further determined that Conrad had six criminal history points, which established a criminal history category of III. (PSR, ¶¶ 45-46). With a Total Offense Level of 32 and a Criminal History Category III, the advisory guideline imprisonment range was determined to be 151-188 months. (PSR, ¶ 73).

The PSR also included detailed information regarding Conrad's prior felony conviction from the State of Michigan involving sexual activity with a minor female under the age of 13. (PSR, ¶ 40). The PSR stated that Conrad was convicted of the offense of "Assault With Intent to Commit Criminal Sexual Conduct – Second Degree" in the Circuit Court of Genesee County, Michigan, in Case No. 03-012932-FC-R. *Id*. The PSR proceeded to outline information obtained from police reports regarding the facts underlying the conviction, including specific details that Conrad engaged in sexual activities with both a 9 year old and 12 year old girl. *Id*.

AFPD Tilsen filed an objection to the PSR on July 2, 2013, stating that Conrad "objects to ¶ 40 of the PSR as inaccurate both with respect to the allegation concerning his conduct as well as the subsequent procedural history." (Doc. # 41). AFPD Tilsen subsequently filed a Sentencing Memorandum on behalf of Conrad. (Doc. # 46). In the memorandum, AFPD Tilsen informed this Court that there were no objections to the calculation of the sentencing guidelines as set forth in the PSR. Clarifying the previously filed objection to the PSR, AFPD Tilsen explained that Conrad disagreed with some of the factual descriptions regarding his prior convictions "which purport to describe conduct other than that to which he plead guilty." (Doc. 46, at 1).

In the sentencing memorandum, AFPD Tilsen requested a sentence of 120 months, a sentence far lower than the bottom end of the applicable guideline range. Among other things, AFPD Tilsen cited Conrad's age and physical health as reasons to justify a significant downward variance.

**F. Conrad writes letters to the District Court**

Between the date of the guilty plea hearing and the sentencing hearing, Conrad sent two letters to this Court requesting the removal of AFPD Tilsen as his attorney. In the letters, Conrad expressed concern over what he believed was a valid Fourth Amendment claim that had not been raised by AFPD Tilsen. Conrad asked this Court for leave to withdraw his guilty plea. Additionally, Conrad asked for the appointment of new counsel to further investigate a Fourth Amendment issue he believed would prove to be meritorious.

**G. Sentencing Hearing.**

On August 26, 2013, this Court conducted a sentencing hearing. At the outset, Conrad acknowledged that he had reviewed the PSR in detail with AFPD Tilsen. Regarding the objection to the PSR pertaining to certain factual statements relating to Conrad's prior felony conviction from the State of Michigan, the following exchange took place:

Mr. Tilsen: Your Honor, although there were no objections to the guideline calculations, there were two objections that I specified to certain factual statements in - -

The Court: Right. Paragraph 38 and Paragraph 40.

Mr. Tilsen: Correct.

The Court: Have you all worked that out or what?

Prosecutor: Well, I think, Your Honor, what my request would be is insofar as the long paragraph on page 8 is concerned... It takes up nearly the entire page. My understanding of the objection is that Mr. Conrad is not admitting to the specific content -- conduct as described in that very long paragraph on page 8 as well as the bottom of page 9 … those are the things he is disputing, and it would be the Government's position that the Court does not need to consider that in determining an appropriate sentence, because the actual convictions themselves are not being

10

objected to. So if the Court would disregard those facts as stated within the report, I think that would meet the needs or appease Mr. Conrad's objection.

The Court: Do you agree, Mr. Tilsen?

Mr. Tilsen: I would use the word satisfied ..., but, yes, I do agree to that.

(Sent. Hrg. Tr., at 2-4).

This Court announced that it would disregard the commentary in the PSR relating to certain factual statements regarding his prior felony conviction from the State of Michigan and only consider the fact that he had been convicted of the offense. This Court then reviewed the sentencing guidelines with the parties. AFPD Tilsen and the prosecutor both announced there were no objections to the guidelines calculations. This Court proceeded to address Conrad directly regarding the letters he sent to the Court requesting the appointment of new counsel. The following exchange took place:

The Court: Before going further I do want to address two other matters. The first is that you had some matters, Mr. Conrad, that you wanted me to consider, but you left them down in the holding cell, or something like that.

Mr. Conrad: It was just an allocution speech. It was not really of any significance. It was just to reiterate the letters I've previously sent to you about Mr. Tilsen.

The Court: ... If you want to go get those materials, we can, but I have received these letters from you-all relating to your request to have a new attorney in the case, and, frankly, you've not specified any grounds that would justify replacing your attorney. Mr. Tilsen is probably the most experienced criminal defense lawyer in all of Southeast Missouri. I don't really understand your complaints about him other than that you are concerned by the severity of the charges against you and the sentence that's provided under the sentencing guidelines. Mr. Tilsen, do you want to respond further about this?

Mr. Tilsen: First of all, Mr. Conrad - - and correct me if I'm wrong about this - - ... what you want to communicate to the Court was your communications to the Court about withdrawing your plea and substituting a different lawyer, because I

wouldn't pursue [a particular] argument. Aren't those the two issues that you wanted to say?

Mr. Conrad: Basically, yes.

The Court: Let me just tell you and tell you now that I'm not going to let you do that. At the time you entered your - - or pled guilty you told me that you were satisfied with the way your lawyer has handled your case, that he had investigated the case to your satisfaction, that you had no gripes or complaints whatsoever and that he had done everything you've asked him to do.

Mr. Conrad: At that time he had, Your Honor.

The Court: Right.

Mr. Conrad: But I was made aware of a Supreme Court ruling just after agreeing to my plea that I wished Mr. Tilsen would have looked into or at least informed me was under consideration by the U.S. Supreme Court at that time.

***

The Court: Now, as far as this case that you wanted him to look into, it's - - can you advise me on that, Mr. Tilsen?

Mr. Tilsen: Well, Mr. Conrad, in one of his letters to you, actually quoted accurately a letter I wrote to him and explained to him why I wouldn't pursue [that argument].

***

Mr. Tilsen: Well, the dog sniff case from the Supreme Court1 that was decided afterwards. Mr. Conrad thought that that impacted on - -

The Court: I'm familiar with that case, yeah.

Mr. Tilsen: He thought it would impact the Fourth Amendment considerations in his case, which involved a search warrant obtained after - -

The Court: For computers.

Mr. Tilsen: Right. And - -

The Court: There was no dog involved in the search, was there?

Mr. Tilsen: No there was not.

Mr. Conrad: It was a technology issue. It was more basically along the lines of *Kyllo*.

The Court: Well, I can just - - I can just tell you that that's - - seems to the Court to be a frivolous consideration, that kind of case. I can't imagine any scenario where that kind of case would apply to your kind of case.

Mr. Tilsen: And those were the points. I mean, you asked me what points, and I feel ill placed, because, obviously, he wants to have another lawyer to make his arguments for him. But those are the points that Mr. Conrad wanted to raise and that led us to the impasse that we arrived at.

The Court: Was there any issue other than failing to raise this search and seizure case?

Mr. Conrad: That was the only one at the time, Your Honor.

The Court: Okay. I'm going to deny your motion to remove counsel and to appoint new counsel. And also to the extent your motion is to withdraw your plea I'm denying that as well.

(Sent. Hrg. Tr., at 5-10).

This Court proceeded with formal sentencing. The prosecutor, in accordance with the terms of the plea agreement, recommended a sentence of 151 months. The prosecutor also noted that, as part of the plea agreement, the Government agreed not to pursue charges for receipt or transportation of child pornography. (Sent. Hrg. Tr., at 10). Such a charge, the prosecutor explained, would have triggered a mandatory minimum sentence of 15 years imprisonment. Id. AFPD Tilsen requested a sentence of 120 months, a term far below the bottom end of the applicable guideline range. AFPD Tilsen highlighted a number of factors which he believed supported a downward variance, including Conrad's

age and health considerations. (Sent. Hrg. Tr., at 11-13). This Court then provided

Conrad with an opportunity to make a statement:

> Mr. Conrad: Mr. Tilsen did a good job there covering basically what I was thinking. I would like to point out to the Court that most of my offenses except one were misdemeanors … and I think Mr. Tilsen has done a wonderful job up to date.
>
> The Court: Contrary to what you said before in these letters, yeah.
>
> Mr. Conrad: Everyone has a change of heart, Your Honor.

(Sent. Hrg. Tr., at 13).

Conrad was sentenced to serve a term of imprisonment of 151 months, followed

by lifetime supervised release. The sentence imposed by this Court was at the bottom of

the applicable guideline range.

This Court imposed a number of special conditions of supervised release,

including: participation in a substance abuse treatment program; requirement that he not

consume alcohol; participation in a mental health evaluation; participation in a sex-

offense specific treatment program; participation in a vocational services program;

comply with sex offender registration laws; no contact with children under the age of 18

without approval of the probation office; requirement that he stay at least 500 feet away

from schools, parks, and other places frequented by children without the approval of the

probation office; requirement that he not possess obscene material, requirement that he

submit to searches by the probation office based upon reasonable suspicion; requirement

that he not use or possess a computer and that he not access the internet; and a

requirement that he not purchase or maintain a post office box without the approval of the probation office. (Sent. Hrg. Tr., at15-18).

**H. The Appeal.**

This Court appointed attorney Cliff Verhines to represent Conrad in his appeal. Mr. Verhines carefully examined the record in the case and determined that the appeal raised only legally frivolous issues. On February 24, 2014, Mr. Verhines filed a brief in the United States Court of Appeals for the Eighth Circuit in accordance with *Anders v. California*, 386 U.S. 738 (1967). Additionally, Conrad filed a *pro se* brief essentially asserting that his Fourth Amendment rights were violated when law enforcement officials accessed files he was offering to other users through a peer-to-peer file-sharing network. On June 12, 2014, the Eighth Circuit affirmed Conrad's conviction and sentence. The mandate was issued on September 26, 2014.

## APPLICABLE LAW

**A. Need for Evidentiary Hearing and Burden of Proof**

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing, the court must take many of petitioner's factual averments as true. However, the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

**B. Ineffective Assistance of Counsel**

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. *Id.* at 687. This requires the movant to show that counsel made errors so serious that counsel

was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Id*.

Secondly, the movant must demonstrate that the deficient performance prejudiced the

defense so as to deprive the defendant of a fair trial, that is, a trial whose result is reliable.

*Id*. The movant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's

representation fell below an objective standard of reasonableness; and (2) but for this

ineffective assistance, there is a reasonable probability that the outcome of the trial would

have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More

recently, the Eighth Circuit has described the Strickland test as follows: Whether

counsel's performance was in fact deficient and, if so, whether the defendant was

prejudiced by the inadequate representation. If the answer to either question is no, then

the other part of the test need not be addressed. *Fields v. United States*, 201 F.3d 1025,

1027 (8th Cir. 2000). In other words, if it is clear from the record that a defendant

suffered no prejudice, an inquiry into counsel's performance is unnecessary.

A reviewing court's scrutiny of counsel's performance must be highly deferential.

*Strickland*, 466 U.S. at 689. When evaluating counsel's performance, the court must

indulge in a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance. *Id*. Counsel's performance is considered objectively,

and gauged whether it was reasonable under prevailing professional norms and

considering all the circumstances. *Fields*, 201 F.3d at 1027 (quoting *Strickland*, 466 U.S.

at 688). Counsel's challenged conduct is viewed as of the time of the representation, and

a reviewing court "avoid[s] making judgments based on hindsight." *Fields*, 201 F.3d at

1027.

**DISCUSSION**

### A. Ineffective Assistance of Counsel claims are without merit

Conrad raises sixteen (16) separate points in his petition. A number of these claims

relate to the same or similar issues and, therefore, will be addressed collectively.

### Grounds One, Two, Three, and Fifteen

Grounds One, Two, Three, and Fifteen all pertain to alleged Fourth Amendment

violations. Conrad complains that AFPD Tilsen did not file a motion to suppress evidence

in his case. As a general matter, Conrad waived his right to contest the constitutionality

of any searches or seizures when he entered a guilty plea to the charge. *See Tollett v.*

*Henderson*, 411 U.S. 258 (1973) (holding that a criminal defendant who has entered a

guilty plea may not thereafter raise independent claims relating to the deprivation of

constitutional rights that occurred prior to the guilty plea). Indeed, Conrad appeared

before United States Magistrate Judge Blanton and waived his right to file pretrial

motions in open court. Additionally, the plea stipulation provided that Conrad waived

such rights as well.

Regardless, Conrad's Fourth Amendment claim lacks merit. As the plea

stipulation and PSR make clear, Conrad was making files containing images of child

pornography available to other members of the general public using a peer-to-peer file

sharing network. Law enforcement officials obtained copies of the files Conrad was

offering to other users. As the investigation progressed, the detectives obtained a federal

search warrant for Conrad's residence which ultimately led to the discovery of a

computer and hard drive containing child pornography.

Conrad complains that AFPD Tilsen was ineffective for failing to file a motion to

suppress evidence. According to Conrad, law enforcement officials violated his Fourth

Amendment rights when they accessed the images he was making available to the general

public through a peer-to-peer file sharing network. The Eighth Circuit, however, has

flatly rejected such an argument. In *United States v. Stults*, 575 F.3d 834 (8th Cir. 2009),

the Court explicitly held that a person lacks a reasonable expectation of privacy in

computer files which are accessible to others for file sharing through the use of peer-to-

peer file sharing networks. In so holding, the Court stated that "[o]ne who gives his house

keys to all of his friends who request them should not be surprised should some of them

open the door without knocking." *Id.* at 843. The Court recognized that "[a]lthough as a

general matter an individual has an objectively reasonable expectation of privacy in his

personal computer, we fail to see how this expectation can survive [defendant's] decision

to install and use file-sharing software, thereby opening his computer to anyone with the

same freely available program." *Ibid.* (internal citation omitted).

In *United States v. Hill*, 750 F.3d 982 (8th Cir. 2014), the Eighth Circuit was once

again confronted with this issue. There, the defendant filed a motion to suppress evidence

claiming that law enforcement officers violated his Fourth Amendment rights when they

accessed his computer using peer-to-peer software and downloaded files from his shared

folder. The district court, relying on *Stults*, denied the motion without an evidentiary hearing. Upholding the district court's ruling, the Eighth Circuit noted that an evidentiary hearing is unnecessary if the district court can determine that suppression is unwarranted as a matter of law. *Id*. at 986. The Court once again explained that the defendant had no reasonable expectation of privacy in publicly shared files and thus "cannot invoke the protections of the Fourth Amendment." *Id*. (citations omitted).

Nonetheless, Conrad maintains his Fourth Amendment rights were violated. Conrad's argument is premised on a mistaken interpretation of an opinion of the United States Supreme Court released approximately one week after he entered his guilty plea. On March 26, 2013, the Supreme Court released its opinion in *Florida v. Jardines*, 569 U.S. 1 (2013). That case concerned the use of a trained narcotics dog to conduct "sniffs" around the immediate surroundings of a home. The Court ruled that the use of a trained detection dog to sniff for narcotics on the front porch of a private home constitutes a "search" within the meaning of the Fourth Amendment. Conrad mistakenly believes this ruling would have an impact on the outcome of his case. Contrary to Conrad's claims, however, *Jardines* simply has no applicability to the facts of his case.

If AFPD Tilsen had filed a motion to suppress, it would have certainly been overruled. Indeed, as was the case in Hill, such a motion could have been easily disposed of without the need for an evidentiary hearing. Thus, Conrad cannot demonstrate that he was prejudiced.

**<u>Grounds Five and Six</u>**

In Grounds Five and Six, Conrad complains that his prior conviction from the State of Michigan was improperly used to enhance his sentence. Conrad asserts that AFPD Tilsen rendered ineffective assistance of counsel for failing to investigate the facts of this conviction. Specifically, Conrad claims his prior conviction for "Assault with Intent to Commit Criminal Sexual Conduct" was not a felony offense, but rather a "high misdemeanor" under Michigan law. Because the conviction was for a misdemeanor offense, Conrad maintains, it does "not fit the required statute to determine enhancement."

This claim is without merit. The PSR accurately reported Conrad's criminal history. In ¶ 40, the PSR stated that Conrad was convicted of the offense of "Assault with Intent to Commit Criminal Sexual Conduct – Second Degree" in the Circuit Court of Genesee County, Michigan, in Case No. 03-012932-FC-R. Although Conrad claims this was a "high misdemeanor" under Michigan law, the statute plainly states otherwise. M.C.L.A. § 750.520g(2) clearly sets forth that assault with intent to commit criminal sexual conduct in the second degree is "a felony punishable by imprisonment for not more than five years."

The PSR outlined specific details surrounding the conviction, which included sexual acts Conrad engaged in with two minor females. One of the minor females was nine years old at the time of the offense, and the other was twelve. While AFPD Tilsen filed an objection to the PSR objecting to the factual descriptions of the offense contained therein, there was never any dispute that Conrad committed a sexual offense involving a minor. The plea agreement expressly stated that Conrad was subject to an enhanced

sentence because he had a prior conviction "involving a minor who was less than thirteen years old." (Plea Stip., at 4). Furthermore, this Court explained the range of punishment at the plea hearing, informing Conrad that this range was in place "because you have a prior conviction of criminal sexual conduct involving a minor who was less than 13 years old from the State of Michigan." (Plea Hrg. Tr., at 11). Conrad acknowledged that he understood. Although Conrad objected to the PSR, the record at the sentencing hearing made it clear that Conrad was only objecting to certain factual descriptions contained in the PSR regarding the offense. (Sent. Hrg. Tr., at 2-4). The fact that he had been convicted of a sexual offense involving a minor was never in dispute.

**Grounds Eight, Nine, Ten, and Fourteen**

Grounds Eight, Nine, Ten, and Fourteen involve various complaints regarding supervised release. In Grounds Eight, Nine, and Fourteen, Conrad asserts AFPD Tilsen was ineffective for failing to object to the "ambiguous nature" of both the standard and special conditions of supervised release. In Ground Ten, Conrad asserts AFPD Tilsen should have objected to the imposition of a lifetime term of supervised release, claiming this term was unreasonable "for a first time offense." These claims are without merit for several reasons.

First, it is well-settled that a district court has broad discretion to impose conditions of supervised release, provided that each condition "(1) is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a); (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) is consistent with any pertinent policy statements issued by the Sentencing

Commission." *United States v. Walters*, 643 F.3d 1077, 1080 (8th Cir. 2011) (quoting

*United States v. Bender*, 566 F.3d 748, 751 (8th Cir. 2009). A condition is reasonably

related if tailored to "the nature and circumstances of the offense, the defendant's history

and characteristics, the deterrence of criminal conduct, the protection of the public from

further crimes of the defendant, and the defendant's educational, vocational, medicinal or

other correctional needs." *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005).

Additionally, a lifetime of supervised release is authorized by 18 U.S.C. § 3583(k). See

*United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007). Here, each special condition

included in Conrad's sentence was imposed based upon the nature of the crime to which

he pled guilty. This Court did not abuse its broad discretion in imposing these conditions.

Thus, any objection lodged by AFPD Tilsen would not have been successful.

Second, Conrad acknowledged in the written plea agreement that he understood

that this Court could impose supervised release with standard and special conditions

which relate to the crime he committed. The agreement expressly stated that some of

these special conditions may include that Conrad not possess a computer or have access

to the internet, that he have no contact with minors without the authorization of the

Probation Office, that he participate in sexual offender counseling, and that he not

maintain a post office box. (Plea Stip., at 8-9). The agreement made it clear that this was

not an exhaustive list of special conditions, stating that "[t]*hese and any other special

conditions* imposed by the Court will be restrictions with which [Conrad] will be required

to adhere." (Emphasis added). The agreement further set forth that Conrad would be

subject to standard sexual offender registration requirements. *Id.* During the guilty plea

hearing, Conrad advised the District Court that he was fully satisfied with the representation he received from AFPD Tilsen. Furthermore, Conrad never questioned the terms of supervised release at the sentencing hearing.

Finally, Conrad waived his right to appeal certain issues when he pled guilty. Specifically, Conrad waived his rights to appeal "all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea." (Plea Stip., at 7). Thus, by pleading guilty, Conrad waived his right to challenge all non-jurisdictional issues. *See, e.g., United States v. Limley*, 510 F.3d 825, 827 (8th Cir. 2007). Plea agreements that include appeal waivers are generally enforceable. *See United States v. Clayborn*, 249 F.App'x. 496 (8th Cir. 2007).

## Grounds Eleven and Sixteen

In Grounds Eleven and Sixteen, Conrad asserts AFPD Tilsen was ineffective for failing to challenge the validity of the Indictment. More specifically, Conrad claims the "Government took liberties with an act of Congress, namely the definition of Child Pornography, in an attempt to bias the Grand Jury, causing the indictment to be invalid and faulty on its face." These claims are simply conclusory and baseless.

Even assuming, *arguendo*, that Conrad's complaints regarding the Indictment had at least some merit, he still would not be entitled to the relief requested. As mentioned above, Conrad waived his right to challenge all non-jurisdictional issues in the plea agreement. Moreover, the United States Supreme Court has recognized that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). When a criminal defendant has

"solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* Once a defendant enters a voluntary and unconditional guilty plea, as Conrad did in this case, the guilty plea has the effect of waiving all non-jurisdictional defects in the prior proceedings. *See United States v. Taylor*, 519 F.3d 832, 836 (8th Cir. 2008). *See also United States v. Vaughan*, 13 F.3d 1186, 1187 (8th Cir. 1994) (a "knowing and intelligent guilty plea forecloses independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.")

**<u>Grounds Four and Thirteen</u>**

In Ground Four, Conrad asserts that AFPD Tilsen rendered ineffective assistance of counsel for "fail[ing] to challenge the sufficiency of the evidence and the facts relating to the evidence." In Ground Thirteen, Conrad complains that this Court denied his request to replace counsel and his request to withdraw his guilty plea. The records in the case establish that these claims are meritless. Conrad never expressed any dissatisfaction with AFPD's performance at the guilty plea hearing. In fact, Conrad informed this Court that he was fully satisfied with the manner in which AFPD Tilsen handled his case. (Plea Hrg. Tr., at 5). Conrad announced that AFPD Tilsen had investigated the case to his satisfaction, and that he had done everything he asked him to do. *Id.* Furthermore, Conrad's plea agreement explicitly stated that he had no right to withdraw the plea. (Plea Stip., at 13). At the plea hearing, this Court asked Conrad if he understood that he would not be allowed to withdraw his plea of guilty. Conrad acknowledged that he fully

understood. (Ex., at 8). Conrad's claims are refuted by the record and are denied without an evidentiary hearing.

**Grounds Seven and Twelve**

In Grounds Seven and Twelve, Conrad generally complains about the length of his sentence. In Ground Twelve, Conrad specifically claims AFPD Tilsen was ineffective for failing to argue for a "lower overall sentence." This claim is refuted by the record. The properly calculated guideline range in this case was 151-188. In accordance with the plea agreement, the prosecutor recommended a sentence at the bottom end of this range. AFPD Tilsen urged this Court to impose a sentence of 120 months, a sentence 31 months below the low-end of the applicable guideline range. In support of such a significant downward variance, AFPD Tilsen filed a Sentencing Memorandum highlighting a number of factors, including Conrad's age and physical health. At the sentencing hearing, AFPD Tilsen once again urged this Court to consider a lower sentence of 120 months. Notwithstanding AFPD Tilsen's arguments, this Court ultimately concluded that a sentence at the bottom of the guideline range was appropriate in light of the sentencing factors outlined in 18 U.S.C. § 3553(a).

In Ground Seven, Conrad asserts AFPD Tilsen was ineffective for failing to "adequately negotiate a plea agreement / bargain / deal" on his behalf, claiming he was "forced … into an unreasonable sentence by allowing the inclusion of flawed, outmoded, broad, and encompassing Guidelines enhancements." This claim is also without merit. While Conrad may be upset with the United States Sentencing Guidelines, it is unclear from his petition just how, exactly, this relates to AFPD Tilsen's performance. The

records and files in the case show that Conrad entered the plea knowingly and intelligently. Furthermore, AFPD Tilsen was able to negotiate a plea agreement that did not trigger a mandatory minimum sentence of 15 years. At the sentencing hearing the prosecutor noted that, as part of the plea agreement, the Government agreed not to pursue charges for receipt or transportation of child pornography. (Sent. Hrg. Tr., at 10). Such a charge, the prosecutor explained, would have triggered a mandatory minimum sentence of 15 years imprisonment. *Id*. Clearly, this was to Conrad's benefit.

**CONCLUSION**

For the foregoing reasons, this Court denies Conrad's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Conrad has not made a substantial showing of the denial of a federal constitutional right.

Dated this 1st day of October, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE